AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. '21 MJ1130
)
Red iPhone Cell Phone )
Seized as FP&F No. 2021565300019901 Item 002 )
("Target Device") )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code § 1324 | Transportation Of Illegal Aliens (a)(1)(A)(ii) |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Wesley Cornue, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Wesley Cornue, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____telephone____ *(specify reliable electronic means)*.

Date: __03/25/2021__

*Judge's signature*

City and state: San Diego, California          HON. DANIEL E. BUTCHER, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Wesley Cornue, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrants to search the following electronic devices:

> Red iPhone Cell Phone
> Seized as FP&F No. 2021565300019901 Item 002
> ("Target Device")

the ("**Target Device**"), as further described in Attachment A to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant(s) relate to the investigation and prosecution of Jose Angelo PLASENCIA for transportation of illegal aliens within the United States. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2007, and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal

1

Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for twelve years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling

activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as

3

emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On March 24, 2021, Border Patrol Agents A. Pineda, M. Lee, J. Farrell-Gulias, and R. Roth II were all assigned to the Brown Field Border Patrol Station's area of responsibility. In addition, Border Patrol Agents B. Hurlbut and R. Arroyo were dressed in plain clothes with their Border Patrol badges displayed around their necks, and were driving unmarked Border Patrol vehicles with fully functioning lights and sirens.

12. At approximately 8:33 AM, Agent Pineda observed a white Nissan Altima parked east of the South Bay Gun Club entrance on Marron Valley Road, located in Jamul, California. Agent Pineda observed several individuals run from some nearby brush and enter the Altima. Agent Pineda also observed one individual climb into the trunk of the Altima. Agent Pineda approached the Altima, and it quickly sped away traveling north on Marron Valley Road at a high rate of speed. Agent Pineda made a U-turn and proceeded to follow the Altima. At approximately 8:35 AM, Agent Pineda radioed to other agents in the area and relayed his observations.

13. Upon hearing Agent Pineda's radio transmission, Agents Lee and Gulias arrived at the Marron Valley Road and SR-94 intersection to interdict the Altima. Agents Lee and Gulias noticed the Altima heading toward them at a high rate of speed. At approximately 8:37 AM, Agents Lee and Gulias activated their emergency lights and siren and attempted to stop the Altima. The driver accelerated past Agents Lee and Gulias, and clipped another agents marked Border Patrol vehicle while attempting to get around it. The Altima continued driving east on SR94. At this time, Agents Lee and Gulias deemed it unsafe to continue pursuing the Altima.

14. Air and Marine operations helicopter, being flown by Air Interdiction Agent J. Zimmerman, was in the area and began looking for the Altima. Agent Zimmerman observed the Altima traveling east on SR-94 and witnessed it pass another truck by driving into the emergency lane. Agent Zimmerman observed the Altima continue east

5

on SR94 past State Route 188 (SR-188), and relayed the location to agents in vehicles. At this time, Agents Hurlbut and Arroyo were positioned with a Controlled Tire Deflation Device (CTDD) further east in Potrero, California. Once Agents Hurlbut and Arroyo observed the Altima driving towards their position, Agent Arroyo deployed the CTDD. The Altima approached the CTDD, swerved slightly toward Agent Hurlbut and Arroyo, and then contacted the CTDD with the left tires. The Altima continually slowed and eventually pulled over into the parking lot of the Potrero Valley Store. This location is approximately 2 miles north of the United States/Mexico International Border, and approximately a half mile east of the Tecate, California Port of Entry. Once the Altima was in the parking lot, Border Patrol Agent C. Hatala arrived at the store, activated his emergency equipment, and pulled in behind the Altima. As Agent Hatala was exiting his vehicle, he observed several individuals run from the Altima. Agents Hatala and Hurlbut ran up to the driver, later identified as defendant Jose Angelo PLASENCIA, and ordered him out of the Altima. Agent Hurlbut then opened the trunk of the Altima and found another individual concealed inside.

15. Shortly after, Agents Arroyo and Roth arrived on scene and helped locate and apprehend four individuals who ran from the Altima. Agent Roth identified himself as a United States Border Patrol Agent to the four individuals that initially ran from the Altima and the one that was concealed in the trunk. Agent Roth conducted an immigration inspection on the five individuals, to include material witnesses Ascencio CALDERON-Cisneros, Alvaro ESTRADA-Rodriguez, and Antonio PIEDAD-Sanchez. All five individuals stated that they are citizens of Mexico without immigration documents allowing them to enter or remain in the United States legally. At approximately 8:55 AM, Agent Roth placed all five individuals under arrest. Upon being informed that the five individuals were in the United States without proper immigration documents, Agent Hurlbut placed defendant PLASENCIA under arrest at approximately 9:00 AM.

16. One Red iPhone Cell Phone (**Target Device**) was discovered on the drivers seat of the Altima. PLASENCIA later claimed ownership of the Red iPhone Cell Phone (**Target Device**).

17. Material witnesses CALDERON, ESTRADA, and PIEDAD admitted to being citizens of Mexico, illegally present in the United States, and not having any documents that would allow them to enter or remain in the United States legally. CALDERON, ESTRADA, and PIEDAD admitted to making smuggling arrangements. ESTRADA and PIEDAD stated they had agreed to pay $11,000.00 USD. CALDERON, ESTRADA, and PIEDAD stated that they illegally crossed into the United States on March 23, 2021, by walking through the mountains near Tecate, California. CALDERON, ESTRADA, and PIEDAD stated that after they were smuggled into the United States, they were taken to a parking lot and were advised to wait for a car to pick them up. CALDERON, ESTRADA, and PIEDAD stated a four-door vehicle did arrive to pick them up and yelled the code for pick up, "Naranja." CALDERON, ESTRADA, and PIEDAD stated that after hearing the code being yelled, the group ran towards the car. CALDERON sat in the front seat, PIEDAD and two others sat in the back seat and ESTRADA was instructed by the driver to get inside the trunk. CALDERON stated the driver told to everyone in the vehicle, "Hang on, I will speed up because immigration is behind us." CALDERON stated the driver kept going after the vehicle had been spiked. CALDERON stated the driver told them "If you guys can run, run" in the Spanish language. PIEDAD stated that after the vehicle was spiked, the driver told them, "I am going to leave you guys here." CALDERON and PIEDAD stated they felt fear for their life once the driver began to pick up speed. ESTRADA stated that due to the erratic driving, he was consistently bashed and thrown around in trunk of the car causing him to be continuously knocked into all four sides of the trunk. When presented with a photo lineup, CALDERON and PIEDAD were able to identify Jose Angelo PLASENCIA as the driver of the vehicle.

18. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendants were using the **Target Device** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the Defendants, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on February 24, 2021 through March 24, 2021.

## METHODOLOGY

19. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of

the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

22. Law enforcement has previously attempted to obtain the evidence sought by this warrant through the owners' consent. Consent was not given.

### CONCLUSION

23. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

24. Because the **Target Device** was seized at the time of PLASENCIA's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from **February 24, 2021 through March 24, 2021**.

25. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the item(s) described in Attachment(s) A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Wesley Cornue
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 25th day of March, 2021.

Hon. Daniel E. Butcher
United States Magistrate Judge

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

Red iPhone Cell Phone
FP&F No. 2021565300019901 Item 002
("Target Device")

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

11

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A, and includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrants.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **February 24, 2021 through March 24, 2021**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.